UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LAKISHA REYNOLDS, *et al.*,

                             Plaintiffs,

        -against-

RUDOLPH GIULIANI,

                             Defendants.

------------------------------------------------------------------------ x

**STIPULATION OF SETTLEMENT & CORRECTIVE ACTION PLAN**

98 Civ. 8877 (LJL)

Whereas on December 18, 2023, Plaintiffs filed a motion ("the motion") to enforce the 2005 Order ("the Order") in this case;

Whereas the Plaintiffs and Defendants Eric Adams as Mayor of the City of New York and Molly Wasow Park as Commissioner of the New York City Department of Social Services (collectively "City Defendants") (together "the Parties") have since met and conferred several times and the Court has held a series of conferences on the issues in dispute;

Whereas the Parties agree to settle Plaintiffs' motion through the below outlined Corrective Action Plan without admitting any fault, liability, contempt, or violation of the Order and without making any representations about compliance with the Court's 2005 Order in this proceeding;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

1. In consideration for Defendants' agreement to undertake the Corrective Actions set forth herein, Plaintiffs agree that, with the exception of their claims for costs, expenses, and attorneys' fees, the motion and all of the relief sought therein has been fully resolved without the need for the Court to make a determination or finding with regard to Plaintiffs' application for a finding of civil contempt. In the event that the Parties separately are unable to resolve Plaintiffs' claims for costs, expenses, and attorneys' fees, Defendants reserve the right to oppose any motion by Plaintiffs for costs, expenses, and attorneys' fees.

DEFENDANTS will undertake the following Corrective Actions:

2. Management Tool

Defendants have begun utilizing a daily Expedited Supplemental Nutrition Assistance Program ("ESNAP") management tool that reflects each Cash Assistance case

interviewed within seven days of the file date of the application. The management tool enables Defendants to identify cases that screened eligible for ESNAP and interviewed but were not issued the expedited benefit, and to issue the benefit by the seventh day after the application.

Within 15 days of the filing of this order, Defendants will share with Plaintiffs' Counsel a copy of three (3) daily management tools generated during the month of April 2024.

3. Training

Defendants have begun, and will continue to provide, reinforcement training on ESNAP and immediate needs processing for all workers who process Reynolds Class Members' applications.

   a. Defendants will provide the Plaintiffs with all ESNAP and immediate needs training materials within 15 calendar days of the filing of this order and, for any subsequently developed training materials related to ESNAP and immediate needs grants subsequently in use during the duration of the Corrective Action Plan, Defendants will provide a copy within 15 days of the date of initial training to workers.

   b. On a monthly basis, Defendants will provide Plaintiffs with data on the number of workers trained and the dates they are trained for the full period covered by this Corrective Action Plan.

4. Data and Monitoring

   a. Unless specified otherwise below, all monitoring reports subsequently described in this section will be electronically delivered to Plaintiffs by the 30th day of the month following the month for which the data is compiled. Unless specified otherwise below, the first report will be delivered by July 31, 2024 and will reflect June data.

   b. ESNAP and Immediate Needs Grants Data

   Defendants represent that they are presently unable to provide data on the number of applicants who screen eligible for expedited processing for SNAP based solely on their application submission. By regulation, the process of screening for expedited SNAP processing can occur separate and apart from the mandatory eligibility interview. To the extent possible, Defendants will develop a one-time report of such data within 4 months or if unable to do so, will provide a letter explaining the reasons they are unable to provide that data.

   Defendants will provide the number and percentage of cases eligible for ESNAP benefits in which Defendants issued ESNAP benefits by the seventh day following the date of application ("ESNAP Issuance Report"). Completion of an eligibility interview within seven days of the application file date is a component of determining eligibility for issuance of an ESNAP benefit unless a

broad waiver of participation in interviews is effectuated by the authorization of the Food and Nutrition Service.

Defendants will develop and produce a monthly report to Plaintiffs by May 31, 2024 ("the May 31 report"), identifying the number of Reynolds Class Members who present with a food emergency, and of those, the number who received a Food-related Immediate Needs grant or ESNAP benefits on the day of their eligibility interview.

Upon submission of the first iteration of the May 31 report, the Parties will meet and confer regarding the format and sufficiency of the reporting. If after meeting and conferring, a dispute remains as to the sufficiency of the reporting, the Parties may seek court intervention through a letter motion to the Court.

c. Cash Assistance On Demand Phone Interview System ("CA OD")

Defendants will provide monthly data on the following CA OD indicators:

   i. Average application wait time: The numerator is the total time callers spent waiting in queue for an interview agent to take the call. The denominator is the number of inbound callers the system placed in the interview queue. The in-queue time includes the time spent waiting for a call-back even when the caller is not actively on the line. Abandoned calls are not included in this metric. In addition to this average, without conceding the relevance or materiality of any of the following data, Defendants will also provide the following:

      a. The number of inbound callers to CA OD placed in the application interview queue.

      b. Wait time range: Identify the maximum amount of time a caller spent waiting in the queue for an application interview before an agent took the call, and the minimum amount of time a caller spent waiting in the queue for an application interview before an agent took the call. Defendants will also provide the number of callers who waited for each of the following time increments for an application interview before the agent took the call: (1) Less than 1 hour; (2) Between 1 and 2 hours; (3) Between 2 and 3 hours; (4) Between 3 and 4 hours; (5) More than 4 hours.

   ii. Abandonment rate: The numerator is the number of inbound application callers who wait to speak to an interview agent and hang up before the system transfers them to an agent. The denominator is the number of inbound callers who the system placed in the interview queue. This metric excludes callers who

      requested call-backs.

    iii. **Average time to abandonment:** The average length of time the inbound caller spends in the application interview queue prior to hanging up. This excludes calls that are transferred to an agent and calls where a call-back is requested.

    iv. Application Call-back rate: The numerator is the number of callers who received a return call the same calendar day after making a callback request. The denominator is the number of inbound callers who entered the queue and requested a callback. "Received a return call" means that the system attempted to connect an available agent with a contact, including instances where the call may go to voicemail.

    v. Dropped Call Data: If Defendants report data on Dropped Calls to the Office of Temporary and Disability Assistance or the Food and Nutrition Service, Defendants agree to provide a copy of the reporting to Plaintiffs.

    vi. Disconnected calls: Defendants will report on any incident in which the Cash Assistance On Demand system experiences a system-wide outage, and will report on the number of callers disconnected during any such outage and the duration of the outage.

  d. Data for Cash Assistance/SNAP Applications Not Submitted Via Access HRA

    Defendants will provide monthly data on the following indicators:

    i. The total number of applications filed by means other than Access HRA.

    ii. Data on In Person Interviews at Benefits Access Centers: To the extent possible, Defendants will develop a report of interview calls initiated to Benefit Access Center ("BAC") phones designated for in-center interviews within 4 months or if unable to do so, will provide a letter explaining the reasons why they are unable to provide that data.

5. Case Monitoring

Defendants will analyze a monthly sample of 60 cases found eligible for ESNAP where the expedited benefit was not issued by the seventh day following the date of application. Defendants will also analyze a monthly sample of 20 cases found eligible

for a food-related Immediate Needs grant, where the grant was not issued on the same day as the interview.

    a. Defendants will provide plaintiffs with an electronic spreadsheet containing case sampling data by the 30th day of the month following the month under review.

    b. For each case, Defendants' analysis will include information as follows:

        i. The length of the delay;

        ii. The cause of the delay, specifically whether the delay was in whole or in part a result of action or inactions by Defendants' staff or the result of action or inaction by the applicant; and

        iii. A descriptive reason for the delay.

Defendants will randomly select 20 CA applications where the applicant completed the CA interview between 8 and 30 days after the application file date and assess if there was an attempt to interview before the 8th day. Defendants will provide their assessment for each case to Plaintiffs by the 30th day of the month following the month in which the applications were submitted.

Defendants will randomly select 20 CA applications where the applicant did not complete an interview after submitting an application and assess if there was an attempt to interview before the 8th day following the application date. Defendants will provide their assessment for each case to Plaintiffs by the 30th day of the month following the month in which the applications were submitted.

The Parties agree that information provided for these 40 cases will be limited to whether the applicant attempted to interview before the 8th day following the application file date. On or before May 15, 2024, Defendants will provide Plaintiffs' counsel with a template of the information that will be provided.

Upon submission of the first template, the Parties will meet and confer regarding the format and sufficiency of the reporting. If after meeting and conferring, a dispute remains as to the sufficiency of the reporting, the Parties may seek court intervention through a letter motion to the Court.

6. Monthly Meetings

While this order is in effect, the Parties will meet monthly to discuss the results of the above-referenced reports and case samples, as well as other relevant topics, including staffing, training, hiring, technological innovations intended to improve ESNAP and Immediate Needs grant processing, and timely processing rates and average wait times relevant to Defendants' compliance with this Corrective Action Plan as outlined in Paragraph 10.

7. Waiver Reporting

Defendants will provide a quarterly report of all federal and State waivers related to Cash Assistance applications currently in effect, as well as waivers applied for, but for which a decision has not been made.

8. Notice of Rights

Within 15 days of the filing of this order, Defendants will assess signage at existing Benefits Access Centers to confirm that it complies with their obligations under Paragraph 5 of the 2005 Order and provide Plaintiffs' counsel with confirmation in writing that the physical signs at all Benefits Access Centers have been assessed.

If necessary, Defendants will ensure that any deficient signage is subsequently corrected and will provide Plaintiffs' counsel with written confirmation that any deficient signage has been corrected. Defendants will provide Plaintiffs' counsel with draft language of any proposed revisions to the language required by Paragraph 5 of the 2005 Order at least two weeks prior to posting and will give Plaintiffs' counsel an opportunity to provide feedback.

Within 15 days of the filing of this order, Defendants will determine whether corresponding information is available on the Access HRA Portal and HRA website and will provide Plaintiffs' counsel with confirmation including screenshots of the posted language.

If Defendants need to develop and add corresponding language to the Access HRA Portal and HRA website, they will do so within 120 days of determining the need to add such language, Defendants will provide Plaintiffs' counsel with draft language two weeks prior to posting and will give plaintiffs' counsel an opportunity to provide feedback. Defendants will notify plaintiffs if any needed changes to Access HRA will take more than 120 days.

Modifications to Language on Access HRA ("AHRA")

Defendants have increased the font size of language on the application submission confirmation page that instructs applicants that they can conduct their interviews at Benefits Access Centers.

Defendants have added language to the AHRA instruction page of the Cash Assistance application that informs applicants of the steps they should take if they have a food emergency and need expedited SNAP or an immediate needs grant for food.

9. Terms for Corrective Action

Compliance under this corrective action plan shall mean: Defendants will be in compliance with the terms of this corrective action plan when they (a) achieve a 95% timely provision of ESNAP benefits to those who interviewed within 7 days of their application and were eligible for ESNAP (95% on Monthly ESNAP Issuance Report),

and (b) do not exceed an average monthly wait time of ninety minutes for interviews on applications for CA OD.

10. Duration of Corrective Actions

Unless otherwise specified, Defendants will be subject to the obligations in Paragraphs 1 through 10 of this Corrective Action Plan for a period of 9 months from the filing of this Order. For any one of the nine months in which Defendants fail to attain the 95% timely processing rate for ESNAP benefits or the average monthly wait times at CA OD exceed ninety minutes, an additional month will be added to the duration of this Corrective Action Plan.. Nothing in this agreement shall limit or prevent Plaintiffs from seeking to further enforce the terms of the 2005 Order. Nothing herein shall affect Defendant's obligations under the 2005 order. Plaintiffs reserve the right to seek further remedies as necessary.

11. Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York.

12. By entering into this Stipulation, Defendants in no way admit any violation of law or the Order or any liability whatsoever to the Plaintiff or the Class Members, individually or collectively, all such liability being expressly denied. Nothing herein contained nor any disclaimer of the parties modifies or alters the findings and legal conclusions reached by the Court in the Decisions, Judgments and Orders already rendered in this matter, or prohibits their use as precedent.

Saima Akhtar  
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE  
50 Broadway, Suite 1500  
New York, NY 10004  
Tel: (646) 558-6152  
akhtar@nclej.org

Abby Biberman  
Julia Russell  
NEW YORK LEGAL ASSISTANCE GROUP  
100 Pearl St., 19th Floor  
New York, NY 10004  
Tel: (212) 613-5000  
abiberman@nylag.org  
jrussell@nylag.org

By: /s/_____  
   Saima Akhtar

By: /s/_____  
   Abby Biberman

| | |
|---|---|
| Rodrigo Sanchez-Camus<br>Jesenia Ponce<br>NORTHERN MANHATTAN<br>IMPROVEMENT CORPORATION<br>45 Wadsworth Avenue, 6th Floor<br>New York, NY 10033<br>Tel: (212) 822-8300<br>rodrigosanchez@nmic.org<br>jeseniaponce@nmic.org | Emily Lundgren<br>Kathleen Kelleher<br>Judith Goldiner<br>Edward Josephson<br>Anne Callagy<br>Susan Welber<br>THE LEGAL AID SOCIETY<br>49 Thomas Street, 5th Floor<br>New York, NY 10013<br>(212) 298-5232<br>elundgren@legal-aid.org<br>kkelleher@legal-aid.org<br>jgoldiner@legal-aid.org<br>ejosephson@legal-aid.org<br>acallagy@legal-aid.org<br>sewelber@legal-aid.org |
| By: /s/_____<br>     Rodrigo Sanchez-Camus | By: /s/_____<br>     Emily Lundgren |

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel for the
City of New York
*Attorney for the City Defendants*
100 Church Street, 2nd Floor
New York, New York 10007
(212) 356-0886
pfrank@law.nyc.gov

By: /s/_____
     Philip S. Frank
     Assistant Corporation Counsel

Dated: April 19, 2024
New York, New York

SO ORDERED:

_____
Lewis J. Liman
United States Judge