UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LAKISHA REYNOLDS, *et al.*,

                                                        Plaintiffs,

                       -against-

                                                              98 Civ. 8877

RUDOLPH GIULIANI, *et al.*,

                                                        Defendants.

------------------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE APRIL 2024 CORRECTIVE ACTION PLAN

## TABLE OF CONTENTS

I. City Defendants Do Not Deny that they Remain Out of Compliance with the 2005 Order………………………………………………………………………………………..2

II. Plaintiffs' Motion Is the Most Effective Means of Ensuring Compliance with the 2005 Order and Is Within This Court's Discretion to Order……………………………………………….4

III. Plaintiffs Have Not Filed a Motion Pursuant to Rule 60(B) or a Motion for Contempt…….6

## TABLE OF AUTHORITIES

**Cases**

*Baez v. New York City Housing Authority*, 2018 WL 6242224 at *1 (S.D.N.Y. Nov. 29, 2018).4, 6

*Marisol A. ex. rel, Forbes v. Giuliani*, 157 F. Supp. 2d 303 (2002)……………………………….5

*Greater Chautauqua Federal Credit Union v. Quattrone*, 2023 WL 6037949 (S.D.N.Y. Sept. 15, 2023)………………………………………………………………………………………………6

## PRELIMINARY STATEMENT

The motion currently before the Court seeks the most expedient resolution to the City Defendants' continued noncompliance with their obligation to provide timely Immediate Needs Grants to New York City residents who will otherwise go hungry. The law requires absolute compliance with these timeliness obligations because no-food emergency Immediate Needs Grants are the epitome of subsistence benefits – grants provided to people experiencing poverty so that they can buy the food they need to survive. *See* ECF 304 n. 4. According to the most recent data produced under the Corrective Action Plan ("CAP"), City Defendants provided timely assistance to only 73.8% of households experiencing a no-food emergency during the month of January 2025 and only 75.9% of households experiencing a no-food emergency during the month of February 2025—meaning that 1,945 households went hungry in January and 1,243 households went hungry in February as a direct result of the City Defendants' noncompliance with the law. Russell Decl. ¶¶ 5-6.

City Defendants attempt to confuse the issues raised in Plaintiffs' motion, postulating that Plaintiffs actually intended to file some other sort of motion, and countering arguments never raised by Plaintiffs regarding Defendants' compliance with the court-ordered Corrective Action Plan. Plaintiffs' request and argument are simple – we ask that the Court extend the CAP in order to ensure that the City Defendants reach full compliance with the 2005 Order and relevant statutes.

Plaintiffs did not, and do not, argue that the City Defendants are out of compliance with the specific terms of the CAP. Rather, Plaintiffs argue – and the City Defendants do not contest – that the City Defendants continue to fall well short of compliance with the 2005 Order and relevant statutes regarding timely provision of no-food emergency Immediate Needs Grants. The

CAP, which was ordered by this court to bring the City Defendants into compliance with the 2005 Order and relevant statutes, has been effective at improving the City Defendants' performance, but the job is not yet complete. The numbers provided by the City Defendants to this Court indicate that at least one fifth of no-food emergency Immediate Needs Grants applicants are still waiting beyond the statutory deadline to receive essential assistance to address no-food emergency situations. *See* ECF 305-1, ¶4.[1]

    Plaintiffs request that this Court extend the CAP with modifications in order to most effectively and efficiently ensure the City Defendants reach full compliance with the 2005 Order. The alternative – terminating the current CAP and requiring Plaintiffs to file a new motion for contempt to address City Defendants' noncompliance – would cause unnecessary harm to the Plaintiff Class and waste the time and resources of the Court and the parties.

## **CITY DEFENDANTS DO NOT DENY THAT THEY REMAIN OUT OF COMPLIANCE WITH THE 2005 ORDER**

    The City Defendants commit considerable time in their opposition to the instant Motion to arguing that they are not out of compliance with the terms of the CAP. With the exception of a minor dispute over the precise month in which the CAP should end (*see* ECF 304 note 3), Plaintiffs have not argued that the City Defendants are out of compliance with the terms of the CAP. The CAP requires specific monthly reporting, monthly meetings with Plaintiffs, and certain performance benchmarks related to interview access and the timely provision of ESNAP benefits. ECF 292. Plaintiffs agree that, aside from the City Defendants' inability to provide

---

[1] The numbers provided by the City Defendants in paragraph 4 of the Snyder Declaration are the result of HRA's own analysis of untimely no-food emergency cases, in which HRA excluded cases that the agency deems to be ineligible for Immediate Needs Grants. Plaintiffs have been provided with no other information regarding this analysis, and do not concede that the analysis or related determinations as to eligibility are accurate. Plaintiffs note that even using their own analysis to cast compliance numbers in the most positive possible light, the City Defendants are still far from meeting their timeliness obligations.

complete data during the first few months of the CAP, the City Defendants have complied with the obligations enumerated in the CAP. *See* ECF 304 at n. 3.

However, Plaintiffs *do* argue that the noncompliance with the 2005 Order by the City Defendants that underlay Plaintiffs' 2023 Motion for Contempt continues with regard to the timely issuance of no-food emergency Immediate Needs Grants. *See* ECF 304 at 8. Plaintiffs filed their initial motion for contempt due to two failures by the City Defendants: 1) failure to provide required monitoring data, and 2) substantive failure to provide timely emergency benefits to hungry families. *See* ECF 263 at 4-10. Notably, at the time Plaintiffs filed the contempt motion, Defendants had not produced any data regarding their provision of no food-emergency Immediate Needs Grants in nearly three years. *See* ECF 263 at 6 and referenced Declaration and Exhibits. As a term of the CAP, Defendants committed to developing a new report to track their timeliness with respect to no-food emergency Immediate Needs Grants, and to provide data from that report to Plaintiffs' counsel. See CAP, ECF 292 at ¶ 4b. Until the City Defendants began reporting on Immediate Needs Grants by way of the report generated under the CAP, Plaintiffs were entirely unable to assess the City Defendants' compliance with timeliness requirements for no-food emergency Immediate Needs Grants as required by the 2005 Order. Upon review of the data produced during the CAP, it became clear that the City Defendants were dangerously noncompliant with their obligations under the 2005 Order. *See generally*, Declaration of Karl Snyder, ECF 305-1. While their performance has improved over the life of the CAP, the City Defendants are still well short of full legal compliance. Plaintiffs therefore ask this Court to extend and modify certain parts of the CAP, identified in our opening brief, to ensure that the City Defendants reach full compliance with the 2005 Order.

## **PLAINTIFFS' MOTION IS THE MOST EFFECTIVE MEANS OF ENSURING COMPLIANCE WITH THE 2005 ORDER AND IS WITHIN THIS COURT'S DISCRETION TO ORDER**

Plaintiffs' motion and the relief requested are appropriate and within this Court's authority to order. Plaintiffs have provided this Court with three examples of cases in the Southern District of New York in which courts extended and modified negotiated obligations in order to ensure the relevant defendants achieved full legal compliance. *See* ECF 304 at 7-8. The City Defendants attempt to undercut these authorities through cherry picked language irrelevant to the matter at hand. These efforts are unavailing.

Plaintiffs cite *Baez v. NYCHA* to demonstrate that courts in this district have extended defendants' obligations where time had run out on a prior order, but substantive compliance with legal obligations had not yet been reached. *See* ECF 304 at 7-8. In *Baez*, the litigation was resolved via a class action settlement, which was so-ordered by the court as a Consent Decree. 2018 WL 6242224 at *1 (S.D.N.Y. Nov. 29, 2018). After the *Baez* defendant failed to come into compliance with the law within the time contemplated by the settlement, the court both ordered an extension of its own jurisdiction and imposed additional obligations upon the defendant. *Id.* at *5.

The City Defendants misapply language from *Baez* regarding proper procedures for modifying a class action settlement to mistakenly conclude that Plaintiffs' motion is procedurally improper. *See* ECF 305 at 7-8. While the *Baez* court agreed with the need to extend and modify the Consent Decree, it sought to do so via the appropriate procedural means. This is irrelevant here, because Plaintiffs do not seek modification of a class action settlement. Rather, the requirements in this case were imposed via a court ordered judgment; the negotiated CAP resulted from the City Defendants' noncompliance with that order. *See* ECF 304 at 2-3.

The City Defendants also erroneously attempt to distinguish *Marisol A. ex. rel, Forbes v. Giuliani*, 157 F. Supp. 2d 303 (2002), which supports Plaintiffs' contention that this Court may extend the CAP terms to ensure legal compliance. *See* ECF 305 at 9-10, ECF 304 at 7-8. City Defendants attempt to argue that *Marisol A.* does not apply to the instant motion because the court's decision to extend jurisdiction over settlement provisions in *Marisol A.* relied upon language in the settlement stating that the court could retain jurisdiction to enforce a specific provision of the agreement. *See* ECF 305 at 9-10. However, the City Defendants ignore that the instant CAP likewise contains language allowing for further action if needed, stating that Plaintiffs "reserve the right to seek further remedies as necessary." ECF 292 at 7. Plaintiffs exercise the right to seek further remedies with the instant motion.

The City Defendants also misapply the portions of the *Marisol A* decision on which they rely. ECF 305 at 8-9. *Marisol A.* specifically concerns whether a court has *jurisdiction to act*—a crucial question when considering the extension or modification of a court ordered settlement that takes the form of a final judgment in a case. *See* 157 F. Supp. 2d at 312-15. However, the instant motion does not require the extension of jurisdiction. As stated above, this Court's jurisdiction over this matter is not in question. The instant motion concerns the slighter ask of extending a CAP put in place to bring the City Defendants into compliance with an existing, undisturbed final order.

It is important to note that the CAP is not a typical settlement. The CAP was not negotiated confidentially at the parties' discretion and presented to the Court for its imprimatur at the conclusion of negotiations. After Plaintiffs filed the Motion for Contempt, this Court ordered the City Defendants to submit a CAP. ECF 279. The parties then exchanged proposals, counter proposals, and redlines before this Court, in public and on the docket. ECF 281, ECF 282, ECF

282-1, ECF 286, ECF 286-1, ECF 286-2, ECF 287, ECF 287-1, ECF 287-3, ECF 290, ECF 290-1. Once the process ordered by this Court was complete, the CAP was so-ordered. ECF 292.

The Court did not issue an order on Plaintiffs' Contempt Motion. But the instruction to Defendants to submit a CAP indicates that this Court identified noncompliance in the City Defendants' performance under the 2005 Order that required correction. The performance issues at play at the time of the Contempt Motion have not yet been fully resolved, and so this Court should use its discretion to extend parts of the CAP that it ordered the City Defendants to submit.

## **PLAINTIFFS HAVE NOT FILED A MOTION PURSUANT TO RULE 60(B) OR A MOTION FOR CONTEMPT**

Plaintiffs have not, and did not intend, to file a Rule 60(b) motion. Indeed, such a motion would be inappropriate. Rule 60(b) motions are used to modify final judgements. F.R.C.P. 60(b); *see, e.g. Baez*, 2018 WL 6242224 at *2-3 (considering applicability to Rule 60(b) where Consent Decree of which modification was sought constituted final judgment); *Greater Chautauqua Federal Credit Union v. Quattrone*, 2023 WL 6037949 at *3 (S.D.N.Y. Sept. 15, 2023) (noting that Rule 60(b) applies only to final judgments). In this litigation, the final judgment is the 2005 Order, which Plaintiffs do not seek to modify. Rather, Plaintiffs seek to extend and modify the CAP—a separate procedural mechanism entered into at the explicit encouragement of the Court in order to resolve noncompliance with the relevant final judgment.

Plaintiffs likewise have not renewed our Motion for Contempt or commenced a new Motion for Contempt. On the contrary, Plaintiffs' instant motion is an attempt to avoid a new Motion for Contempt by ensuring that the City Defendants continue their progress towards full compliance with the 2005 Order and relevant statutes. The so-ordered CAP has already proven effective to achieve partial compliance with 2005 Order and relevant statutes. Plaintiffs now move the Court to extend and modify the CAP to ensure that City Defendants reach full

6

compliance and to ensure that households facing a no food emergency receive Immediate Needs Grants timely as required by law.

## **CONCLUSION**

For the forgoing reasons, and the reasons included in Plaintiffs' Memorandum of Law in Support of Their Motion to Extend and Modify the CAP, Plaintiffs' motion should be granted.

Dated: May 21, 2025
New York, New York

    /s/ *Katharine Deabler-Meadows*
Katharine Deabler-Meadows
Saima Akhtar
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
Tel: (646) 558-6152
deabler@nclej.org
akhtar@nclej.org


    /s/ *Abby Biberman*
Abby Biberman
Julia Russell
**NEW YORK LEGAL ASSISTANCE GROUP**
100 Pearl St., 19th Floor
New York, NY 10004
Tel: (212) 613-5000
abiberman@nylag.org
jrussell@nylag.org


    /s/ *Emily Lundgren*
Emily Lundgren
Kathleen Kelleher
Judith Goldiner
Edward Josephson
Anne Callagy
Susan Welber

Laboni Rahman
**THE LEGAL AID SOCIETY**
49 Thomas Street, 5th Floor
New York, NY 10013
Tel: (212) 298-5232
elundgren@legal-aid.org
kkelleher@legal-aid.org
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
acallagy@legal-aid.org
sewelber@legal-aid.org
lrahman@legal-aid.org

/s/ *Rodrigo Sanchez-Camus*
Rodrigo Sanchez-Camus
Jesenia Ponce
**NORTHERN MANHATTAN IMPROVEMENT CORPORATION**
45 Wadsworth Avenue, 6th Floor
New York, NY 10033
Tel: (212) 822-8300
rodrigosanchez@nmic.org
jeseniaponce@nmic.org