```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
LAKISHA REYNOLDS, et al.,                                        :
                                                                 :
                       Plaintiffs,                               :
                                                                 :        98-cv-8877 (LJL)
        -v-                                                      :
                                                                 :     MEMORANDUM AND
RUDOLPH GIULIANI, et al.,                                        :          ORDER
                                                                 :
                       Defendants.                               :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/2025

LEWIS J. LIMAN, United States District Judge:

The Court so-ordered a Corrective Action Plan ("CAP") on April 19, 2024. Dkt. No. 292. Plaintiffs move for an order extending the CAP for an additional six months and amending paragraphs three and five of the CAP. Dkt. No. 303. The motion is denied.

### BACKGROUND

Familiarity with the prior proceedings in this matter is presumed.

On December 14, 2005, following five years of litigation and a bench trial, the Court[1] issued an order (the "2005 Order") directing New York City and the New York City Human Resources Administration ("City Defendants") to provide Supplemental Nutrition Assistance Program ("SNAP benefits" or "food stamps") within seven days and to provide "immediate needs" cash grants on the day of application. Dkt. No. 216.

On December 18, 2023, Plaintiffs filed a motion to hold the New York City Defendants in civil contempt of the 2005 Order, requesting that the Court order the City Defendants to provide timely Expedited Supplemental Nutrition Assistance Program benefits ("ESNAP benefits") and

---

[1] At the time, the case was assigned to Judge William H. Pauley III.

Immediate Needs Grants to eligible households and to provide Plaintiffs' counsel with regular monitoring data documenting the timely provision of these benefits. Dkt. No. 262. The parties briefed the motion for civil contempt and engaged in settlement discussions. Dkt. Nos. 263, 274, 278.

On April 18, 2024, the New York City Law Department, as counsel for the City Defendants, wrote to the Court on behalf of the City Defendants and Plaintiffs to advise that the parties had reached a settlement agreement on a corrective action plan that would resolve Plaintiffs' motion for civil contempt without the need for the Court to make a determination or finding regarding the motion. Dkt. No. 290.

As a result, on April 19, 2024, the Court signed the parties' proposed Stipulation of Settlement and Corrective Action Plan. Dkt. No. 292. The CAP recited that the parties had held settlement discussions following Plaintiffs' motion for civil contempt and had agreed to settle Plaintiffs' motion "without admitting any fault, liability, contempt, or violation of the [2005] Order and without making any representations about compliance with the Court's 2005 Order." *Id.* Plaintiffs agreed that "with the exception of their claims for costs, expenses, and attorneys' fees," the CAP had fully resolved "the motion and all of the relief sought therein . . . without the need for the Court to make a determination or finding with regard to Plaintiffs' application for civil contempt." *Id.* ¶ 1.

Among other things, the CAP set forth certain monthly reporting requirements. Those requirements obligated the City Defendants to convey to Plaintiffs: (1) "the number and percentage of cases eligible for ESNAP benefits in which Defendants issued ESNAP benefits by the seventh day following the date of application," (2) "the number of Reynolds Class Members who present with a food emergency, and of those, the number who received a Food-related Immediate Needs

2

grant or ESNAP benefits on the day of their eligibility interview," and (3) a "sample of 60 cases found eligible for ESNAP where the expedited benefit was not issued by the seventh day following the date of application." *Id.* ¶¶ 4(b), 5.

The CAP's reporting obligations were time-limited. Paragraph 10 of the CAP, entitled "Duration of Corrective Actions," specified as follows:

> Unless otherwise specified, Defendants will be subject to the obligations in Paragraphs 1 through 10 of this Corrective Action Plan for a period of 9 months from the filing of this Order. For any one of the nine months in which Defendants fail to attain the 95% timely processing rate for ESNAP benefits or the average monthly wait times at [Cash Assistance On Demand Phone Interview System ("CA OD"] exceed ninety minutes, an additional month will be added to the duration of this Corrective Action Plan. Nothing in this agreement shall limit or prevent Plaintiffs from seeking to further enforce the terms of the 2005 Order. Nothing herein shall affect Defendant's obligations under the 2005 [O]rder. Plaintiffs reserve the right to seek further remedies as necessary.

*Id.* ¶ 10.

The parties do not dispute that the City Defendants have attained the 95% timely processing rate for ESNAP benefits every month that the CAP has been active. Dkt. No. 305 at 2. The City Defendants concede that they exceeded the 90 minute standard for CA OD wait times in three months under the CAP: June, July, and September 2024. *Id.*; Dkt. No. 304 at 3. As a result, although the nine-month period was set to expire in January 2025, three additional months were added to the duration of the CAP such that it ended no earlier than April 2025.[2]

Plaintiffs do not complain about the City Defendants' compliance with the CAP. *See* Dkt. No. 306 at 1 ("Plaintiffs did not, and do not, argue that the City Defendants are out of compliance with the specific terms of the CAP"). They assert, to the contrary, that "the CAP has served a valuable role in improving the City Defendants' compliance with statutorily mandated timeframes

---

[2] Plaintiffs contend that the City Defendants additionally were not in compliance with the CAP in August, September, and October 2024 such that the CAP is extended by its own terms. Dkt. No. 304 at 3 & n.3. That issue is not before the Court at this time.

3

for the provision of essential subsistence benefits" and that "[u]nder the CAP, the City Defendants have made significant progress towards full compliance with federal and state timely processing requirements and the 2005 Order." Dkt. No. 304 at 5–6. However, Plaintiffs claim that "City Defendants are still falling short on timely processing Immediate Needs Grants." *Id.* at 1. Plaintiffs assert that "the City Defendants have not yet come into compliance with the 2005 Order and their statutory obligations on timely issuance of Immediate Needs Grants." *Id.* at 3; *see also id.* at 4–6. According to Plaintiffs, City Defendants provided timely assistance to only 73.8% of households experiencing a no-food emergency during the month of January 2025 and only 75.9% of households experiencing a no-food emergency during the month of February 2025. Dkt. No. 306 at 1.

## DISCUSSION

"Where the parties to a settlement agreement provide for the Court to retain jurisdiction over the settlement agreement, the Court has jurisdiction to enforce the terms of the settlement agreement." *Marisol A. ex rel. Forbes v. Giuliani*, 157 F. Supp. 2d 303, 313 (S.D.N.Y. 2001) (quoting *Scharf v. Levittown Pub. Sch.*, 970 F. Supp. 122, 129 (E.D.N.Y. 1997)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (where court retains jurisdiction over a settlement agreement, it has authority to enforce the agreement). However, the authority to enforce does not convey free rein to add terms. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d Cir. 2020) (holding that a district court "exceeds its authority when it simply rewrites the agreement by imposing terms on the parties to which they did not agree" (citing *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986))); *Manning v. N.Y.U.*, 299 F.3d 156, 164 (2d Cir. 2002) ("It is beyond a district court's discretion to alter the terms of or to refuse to enforce a settlement agreement[], absent special circumstances, such as a material breach of the agreement." (quoting *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F.2d 626, 629

4

(2d Cir. 1982))). Instead, a "settlement agreement is a contract that is interpreted according to general principles of contract law." *Fisher*, 948 F.3d at 605 (quoting *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)). "Critically, '[i]f the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019) (quoting *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 32 (2d Cir. 2016)).

The Court's authority to the enforce the CAP does not include the authority to extend or modify the CAP as Plaintiffs request. Plaintiffs do not identify any special circumstances that would allow the Court to alter the CAP. *See Wolf v. Wolf*, 59 F. App'x 403, 405–06 (2d Cir. 2003) (summary order) ("A district court may enforce a settlement agreement when it properly retains jurisdiction to do so, . . . but the retention of jurisdiction does not permit the district court to modify the agreement's terms, absent special circumstances such as a material breach or duress."); *Jankowski v. Castaldi*, 2010 WL 882867, at *7 (E.D.N.Y. Mar. 12, 2010) ("Without some showing of special circumstances, the court is powerless to change the terms of the parties' agreement."). The parties agreed in clear terms to limit the CAP to a nine-month term subject to certain enumerated conditions by which the CAP could be extended. Dkt. No. 292 ¶ 10. The Court may not add additional time or additional conditions. *See Higgs v. Columbia Univ.*, 2009 WL 77880, at *10 (S.D.N.Y. Jan. 6, 2009) (holding that where "no language of the agreement can be said to be unclear[,] . . . one party's afterthought or regret regarding the terms of a settlement is an insufficient basis for a settlement to be set aside" (citing *Jordan v. Verizon Corp.*, 2005 WL 3116750, at *1 (2d Cir. Nov. 22, 2005) (summary order))); *see also Marisol*, 157 F. Supp. 2d at 306 (holding that where "[n]either party in the present case contends that the State Settlement

5

Agreement is ambiguous[,] . . . the Court will interpret the parties' obligations as set forth within the four corners of the Agreement").

Plaintiffs argue that extending and modifying the CAP would help ensure that the City Defendants comply with the 2005 Order. Dkt. No. 304 at 6–8. But this is the precise matter that was settled by the CAP. The Court may not merely construe the parties' settlement agreement as incorporating any provision that would advance the purpose of the matter to be settled. Instead, if Plaintiffs contend that the City Defendants are in violation of the 2005 Order, Plaintiffs' recourse is not to modify the settlement agreement resolving earlier allegations of contempt but rather to bring a new contempt motion based on the City Defendants' current violation. *See Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001) (noting that plaintiffs may challenge the defendant's performance of a class action settlement through disparate mechanisms including "in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract (if the claim is that one or more parties are not living up to their obligations under the settlement stipulation); or in a motion for relief from judgment under Fed. R. Civ. P. 60(b) (if an amendment of the original judgment is being requested)").

The cases relied on by Plaintiffs are not to the contrary. Plaintiffs argue that "[w]hen presented with a scenario in which court-ordered relief is coming to its intended close, but the defendant has not yet come into full compliance with requirements imposed by the relief order or other legal authorities, courts have extended order provisions." Dkt. No. 304 at 7–8 (citing *Marisol*, 157 F. Supp. 2d at 312–13; *Baez v. N.Y.C.H.A.*, 2018 WL 6242224 (S.D.N.Y. Nov. 29, 2018); *Handschu v. Police Dep't of the City of N.Y.*, 241 F. Supp. 3d 433, 442 (S.D.N.Y. 2017)). Those cases are distinguishable. *Handschu* concerned the court's approval of a revised settlement agreement that had been negotiated and agreed upon by the parties. 241 F. Supp. 3d 433. *Marisol*

6

and *Baez* concerned situations in which the government breached the settlement agreement itself. *See Marisol*, 157 F.Supp.2d at 312 ("Having found that OCFS has failed to comply with ¶ 22 of the Agreement, the Court must fashion a remedy that will [e]nsure compliance."); *Baez*, 2018 WL 6242224, at *4–5 (concluding that "NYCHA's continuing failure to perform under the Consent Decree threatens the achievement of the decree's goals such that modification is warranted"). Here, by contrast, Plaintiffs do not identify any breach of the CAP as opposed to purported violation of the 2005 Order. Dkt. No. 306 at 1. None of Plaintiffs' cases support the proposition that a district court may extend a settlement agreement beyond its express terms where there has been no showing of special circumstances such as breach. *See Wolf*, 59 F. App'x at 405–06; *see also Baez*, 2018 WL 6242224, at *4 ("Clearly one party to a consent decree cannot unilaterally rewrite the agreement over another party's objections, in order to pursue a course of action favored by it but detrimental to the opposing party, where the course of action is not authorized by the consent decree." (quoting *Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023, 1030 (2d Cir. 1993)).

## CONCLUSION

Plaintiffs' motion to extend and modify the CAP is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 303.

SO ORDERED.

Dated: July 9, 2025
      New York, New York

                                 LEWIS J. LIMAN
                              United States District Judge